UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CASE NO. 5:17CR183 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Judge John R. Adams |
| JERRY HUBBARD, ) | |
| ) | ORDER |
| Defendant. ) | |
| ) | |

Pending before the Court is Defendant Jerry Hubbard's motion for compassionate release. Specifically, Hubbard filed a pro se motion for compassionate release on May 15, 2020. Doc. 40. The Court appointed counsel and a supplement to Hubbard's motion for compassionate release was filed on June 18, 2020. Doc. 43. On August 31, 2020, the Government opposed the amended motion. Doc. 47. Hubbard's motion and its supplement are DENIED.

COVID-19 is an abbreviation for the novel coronavirus disease of 2019, a respiratory illness that spreads easily and sustainably in the community through respiratory droplets produced when an infected person coughs or sneezes. See Centers for Disease Control and Prevention Coronavirus Disease 2019 Frequently Asked Questions, https://www.cdc.gov/coronavirus/2019-ncov/faq.html#How-COVID-19-Spreads (last visited April 24, 2020). The novel coronavirus of 2019 is a serious disease, ranging from no symptoms or mild ones for people at low risk, to respiratory failure and death in older patients and patients with chronic underlying conditions. *Id*. The virus has been detected in asymptomatic persons, and its incubation period is believed to be up to fourteen days in duration. *Id*.

Currently, there is no vaccine to prevent COVID-19, nor is there antiviral medication that

can treat it. *Id.* According to the CDC, "[t]he best way to prevent illness is to avoid being exposed to the virus." *Id*. The CDC recommends, among other things, that people clean their hands often or use hand sanitizer when soap is unavailable, avoid close contact with other people (at least six feet in distance), and clean and disinfect frequently touched surfaces daily, such as tables, doorknobs, light switches, and countertops. *Id*. The CDC also recommends that if an individual becomes sick, he or she should isolate from others by staying in a specific sick room and using a separate bathroom if possible. *Id*.

The CDC has also indicated that certain classes of individuals are at higher risk for developing severe illness if exposed to the novel coronavirus of 2019. *Id*. Older adults – 65 or older – and people suffering from underlying medical conditions such as moderate to severe asthma, chronic lung disease, serious heart disease, severe obesity, diabetes, liver disease, kidney disease or people who are immunocompromised such as those who are undergoing cancer treatment, smokers, bone marrow or organ transplant recipients or donors, people with immune deficiencies, poorly controlled HIV or AIDS sufferers and those who have prolonged use of corticosteroids and other immune weakening medications are at higher risk of developing serious illness if they are exposed to COVID-19. *Id*. Additionally, the CDC reports that "[a]pproximately 90% of hospitalized patients identified ... had one or more underlying conditions, the most common being obesity, hypertension, chronic lung disease, diabetes mellitus, and cardiovascular disease." *Id*.

The sentencing court has no inherent authority to modify an otherwise valid sentence. *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, the authority of the Court to resentence a defendant is limited by statute. *United States v. Houston*, 529 F.3d 743, 748–49

(6th Cir. 2008) (citing *United States v. Ross*, 245 F.3d 577, 858 (6th Cir. 2001)). Title 18 U.S.C. § 3582(c)(1)(A) provides that courts may "reduce [an inmate's] term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)" where "extraordinary and compelling reasons warrant [release]," or the prisoner's age and other factors make release appropriate. 18 U.S.C. § 3582(c)(1)(A).

Prior to 2018, only the Bureau of Prisons ("BOP") could move a district court under § 3582(c)(1)(A) for the compassionate release of a federal prisoner. On December 21, 2018, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release. The amendment provides prisoners with two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the BOP's decision not to file a motion for compassionate release, or (2) file a motion after "the lapse of 30 days from the receipt . . . of such a request" by the warden of the prisoner's facility. 18 U.S.C. § 3582(c)(1)(A). No exceptions to the exhaustion requirement are listed in the statute. The parties agree that Hubbard has exhausted his administrative remedies, therefore the Court will address the merits of his request.

Hubbard's argument is premised upon his assertion that he has an elevated risk related to COVID-19 because he has high blood pressure and high cholesterol. As noted above, this Court may "not modify a term of imprisonment once it has been imposed" unless specifically authorized to do so by section 3582(c). This Court may grant compassionate release if, after considering the factors in 18 U.S.C. § 3553(a), it determines that "extraordinary and compelling reasons" warrant a reduced sentence and that "such a reduction is consistent with applicable policy statements issued by the sentencing commission." 18 U.S.C. § 3582(c)(1)(A)(i). The relevant governing

3

policy statement provides that this Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. §1B1.13.

The application note to U.S.S.G. §1B1.13 further defines the "extraordinary and compelling circumstances" required to merit consideration for compassionate release:

> Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is--
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.--
>
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons. --As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13 (Application Note 1). Assuming that the pandemic coupled with his medical conditions is a proper foundation, Hubbard cannot satisfy the initial prong of review – "Provided the defendant meets the requirements of subdivision (2)." Subdivision 2 notes that compassionate release cannot be ordered unless "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

On July 6, 2017, Hubbard pled guilty to Count 1 in the indictment, attempted possession of a controlled substance with intent to distribute. More specifically, Hubbard attempted to possess just-less-than two kilograms of cocaine. In addition, a search of Hubbard's home revealed two firearms, $2,796 in U.S. currency, 47.33 grams of crack, and 7.41 grams of fentanyl. During his sentencing, the Court varied up from the guideline range, noting "This is a defendant who has been involved with the law since the age of 26. He has received sentences of fines, probation, and custody. None of his previous sentences have deterred him from continuing to commit crime."

The Court's analysis during sentencing is equally applicable to the current request for compassionate release. Hubbard has served roughly 41 months of his 100-month sentence. His history indicates that his release would create an immediate danger to the community. Hubbard's first conviction occurred in 1990 when he was 26. Hubbard was convicted of domestic violence and received a 30-day suspended sentence. A year later, Hubbard was convicted of felony

domestic violence.  He received a six-month sentence, but it appears he served less than three months.  In 1996, Hubbard was convicted of trafficking in cocaine, possession of criminal tools, having a weapon under disability, and possession of cocaine.  Hubbard received an aggregate sentence of one year for these convictions. In 1998, Hubbard was convicted of failure to comply and resisting arrest and received a six-month sentence.  In 2004, Hubbard was convicted of conspiracy to distribute cocaine and crack cocaine.  Hubbard was sentenced to 57 months in prison for this conviction.  Finally, in 2016, Hubbard was convicted of aggravated possession of drugs and given a non-custodial sentence.

Hubbard's history makes it clear that the Court's previously imposed sentence is necessary to deter his conduct and protect the public.  As noted above, Hubbard has time and again returned to drug trafficking and violent conduct despite prior sentences.  In fact, even a 57-month sentence imposed by this District Court was insufficient to deter him from returning to a life of crime.  Accordingly, the Court cannot conclude that the 41 months he has served to date will serve to deter him.  There is nothing in Hubbard's history to suggest that the term he has served is sufficient to have either rehabilitated him or convinced him to stop engaging in criminal conduct.  Moreover, there is nothing in his motion or supplement that has served to alter the Court's view that his full 100-month sentence is necessary to protect the public.   Accordingly, the Court finds that Hubbard would be a danger to the community if he were released.  As a result, he cannot satisfy the requirements for compassionate release.   Hubbard's motion is DENIED.

       IT IS SO ORDERED.

September 30, 2020                         /s/*John R. Adams*
Date                                   JOHN R. ADAMS
                                         UNITED STATES DISTRICT JUDGE